UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                          :
GEMNET EXPRESS, INC.,
                                        Plaintiff,        :        06 Civ. 2648 (DF)

                    -against-                             :        **MEMORANDUM
                                                                   AND ORDER**
                                                          :
FEDERAL EXPRESS CORPORATION,
FEDEX GROUND PACKAGE SYSTEM, INC.,                        :
FEDEX CORPORATE SERVICES, INC.,
                                                          :
                                        Defendants.
-----------------------------------------------------------------------X

**DEBRA FREEMAN, United States Magistrate Judge:**

In this case, which is before this Court on consent pursuant to 28 U.S.C. § 636(c),

plaintiff Gemnet Express, Inc. ("Gemnet") seeks to recover the value of property lost or stolen in

the course of a Federal Express shipment.  Defendant Federal Express Corporation ("FedEx")

has moved for partial summary judgment dismissing Gemnet's tort claims and limiting FedEx's

liability to $500 on Gemnet's contract claim.  For the reasons set forth below, FedEx's motion

(Dkt. 28) is granted in part and denied in part.

## BACKGROUND

### A.    Factual Background

Gemnet is a business that ships high-value packages of jewelry and is owned by Boris

Khiyaev ("Khiyaev").  (Def. Rule 56.1 Stm't, at ¶¶ 2-3; Pl. Rule 56.1 Stm't, at ¶¶ 2-3.)[1]  FedEx

---

[1] The facts summarized herein are taken principally from the statements submitted by the
parties pursuant to Local Civil Rule 56.1, which have been appropriately supported by
particularized references to sworn testimony and documentary evidence.  (*See* Defendant Federal
Express Corporation's Rule 56.1 Statement of Material Facts in Support of Defendant's Motion

is a federally certified all-cargo air carrier, operating under authority granted to it by the Federal Aviation Administration.  (Def. Rule 56.1 Stm't, at ¶ 1; Pl. Rule 56.1 Stm't, at ¶ 1.)

On June 29, 2005, Gemnet and FedEx entered into an agreement titled "FedEx Pricing Agreement," signed by Khiyaev, as owner of Gemnet, and Cameron Houchens ("Houchens"), as a FedEx account executive.  (Def. Rule 56.1 Stm't, at ¶ 5; Pl. Rule 56.1 Stm't, at ¶ 5; *see also* Affidavit of Elizabeth Moore, sworn to Dec. 10, 2007 ("Moore Aff."), Ex. F (FedEx Pricing Agreement).)  Incorporated by reference into that agreement were the terms and conditions of the "FedEx Service Guide."  (Def. Rule 56.1 Stm't, at ¶ 6; Pl. Rule 56.1 Stm't, at ¶ 6; *see also* Moore Aff., Ex. F, at ¶ 2 ("Each shipment made with FedEx is subject to the terms and conditions of the FedEx Service Guide . . . ."); *id.,* Ex. G (FedEx Service Guide).)

The FedEx Service Guide contains the following provisions, under the heading "Declared Value and Limits of Liability":

> A.   The declared value of any package represents our maximum liability in connection with a shipment of that package, including, but not limited to, any loss, damage, delay, misdelivery, nondelivery, misinformation, any failure to provide information, or misdelivery of information relating to the shipment.  . . .  Exposure to and risk of any loss in excess of the declared value is either assumed by the shipper.  You may transfer this risk to an insurance carrier of your choice through the purchase of an insurance policy. Contact an insurance agent or broker if you desire insurance coverage.  WE DO NOT PROVIDE INSURANCE COVERAGE OF ANY KIND.

> . . .

for Partial Summary Judgment, dated Dec. 11, 2007 ("Def. Rule 56.1 Stm't"); Response to Defendant's Statement of Facts Pursuant to Local Rule 56.1, dated Jan. 17, 2008 (Pl. Rule 56.1 Stm't").)

  F.  Shipments (packages or freight) containing all or part of the following items are limited to a maximum declared value of US$500:

       . . .

    7.  Jewelry, including, but not limited to, costume jewelry, watches and their parts, mount gems or stones (precious or semiprecious), industrial diamonds and jewelry made of precious metal.

       . . .

  L.  ANY EFFORT TO DECLARE A VALUE IN EXCESS OF THE MAXIMUMS ALLOWED IN THE FEDEX SERVICE GUIDE IS NULL AND VOID.  OUR ACCEPTANCE OF ANY SHIPMENT BEARING A DECLARED VALUE IN EXCESS OF THE ALLOWED MAXIMUMS DOES NOT CONSTITUTE A WAIVER OF ANY PROVISION OF THE FEDEX SERVICE GUIDE AS TO SUCH SHIPMENT.

(Moore Aff., Ex. G, at 174-75 (emphasis in original).)

  Gemnet, however, asserts that it was never provided with a copy of this Service Guide. (Pl. Rule 56.1 Stm't, at ¶ 6.)  According to Khiyaev of Gemnet, Houchens came to his office in or about 2005 to offer him FedEx Services, but Houchens did not provide him with a copy of the FedEx Service Guide, and he never saw such a document.  (*See* Affidavit of Boris Khiyaev, sworn to Jan. 18, 2008 ("Khiyaev Aff."), at ¶¶ 2, 12.)  FedEx does not suggest otherwise.  (*See* Affirmation of Michael F. Newton, Esq., dated Jan. 18, 2008 ("Newton Aff."), Ex. A (excerpts of transcript of deposition of Cameron Houchens (deposition date not provided)), at 41 (admitting that he never provided Khiyaev with the Service Guide).)

  Gemnet contends that Houchens represented to Khiyaev that all items of jewelry shipped by Gemnet were insured for loss in the amount of their declared value, up to $50,000, for which coverage Gemnet was charged a fee of 5% of the declared value.  (Newton Aff., at ¶ 17.)

Gemnet used FedEx for a total of 74 shipments.  For 38 of these shipments, Gemnet declared values in excess of $500 and paid the associated 5% fee.  (*Id*., at ¶ 16.)  Houchens acknowledged, in his deposition testimony, that paying the 5% fee in such cases served no purpose.  (Newton Aff., Ex. A, at 28.)  Gemnet contends, however, that Khiyaev believed the 5% premium to be the cost of insurance up to the declared value.  (*Id*., at ¶ 16.)

On December 5, 2005, Gemnet shipped a package using FedEx; according to Gemnet, the package contained jewelry, and FedEx does not dispute this.  (Def. Rule 56.1 Stm't, at ¶ 9; Pl. Rule 56.1 Stm't, at ¶ 9.)  Gemnet declared a value of $38,600 on the package.  (Def. Rule 56.1 Stm't, at ¶ 10; Pl. Rule 56.1 Stm't, at ¶ 10.)  The package, however, was not delivered to its intended recipient; rather, FedEx was unable to deliver it and instead returned it to Gemnet. (Def. Rule 56.1 Stm't, at ¶ 12; Pl. Rule 56.1 Stm't, at ¶ 12.)  Gemnet contends, and FedEx does not dispute, that, when the package was returned, its contents had been removed.  (*Id.*)

On the loss of the contents of the package, FedEx apparently attempted to tender a check to Gemnet to reimburse it for the charges it paid to ship the package, plus $500, in accordance with the provisions of the FedEx Service Guide.  (Complaint, dated Feb. 23, 2006 ("Compl."), at ¶ 19.)  Gemnet apparently rejected this payment, contending that it should be paid the full declared value of $38,600.  (*Id*., at ¶ 18.)

**B.    Procedural History**

Gemnet commenced this action in 2006 the Supreme Court of the State of New York, County of New York, and FedEx removed the action to this Court.[2]  The Complaint pleads two "causes of action":  First, Gemnet claims that FedEx breached its contract when it returned the

_____

[2] Gemnet's motion for remand was denied (*see* Dkt. 18), and the parties have now completed discovery.

package with the contents removed and refused to pay Gemnet the declared value.  (Compl., at ¶¶ 21-25.)  Second, Gemnet claims that FedEx was negligent in causing the loss of the contents of the package (*id.*, at ¶ 29), and that Gemnet relied to its detriment on a false representation by FedEx that Gemnet would be covered for such loss, up to the full declared value (*id.*, at ¶¶ 27, 31-34).

On December 11, 2007, FedEx moved for partial summary judgment, seeking to limit Gemnet's recovery on its contract claim to $500 in accordance with the terms and conditions of the FedEx Pricing Agreement (the parties' "contract of carriage") and, specifically, the limitation of liability set out in the FedEx Service Guide, incorporated therein.  (*See generally* Defendant Federal Express Corporation's Memorandum in Support of Motion for Partial Summary Judgment, dated Dec. 11, 2007 ("Def. Mem.").)  FedEx also seeks dismissal of Gemnet's tort claims, on the ground that such claims are preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 41713 ("ADA").  (*See* Def. Mem., at 3-4.)

In opposition to the motion, Gemnet argues that the limitation of liability in the contract of carriage is invalid and unenforceable, as it was not the product of a "fair, open, just, and reasonable agreement" between the parties.  (Memorandum of Law on Behalf of Gemnet Express, Inc. in Opposition to Defendants' Motion for Partial Summary Judgment, dated Jan. 18, 2008 ("Pl. Mem.") (Dkt. 32), at 2.)[3]  Gemnet also argues that the contract of carriage is ambiguous with respect to the terms of "return" shipments, such that even if the contractual limitation of liability would apply to ordinary shipments, it should not be applied to returns.  (Pl. Mem., at 1-2.)  Finally, Gemnet argues that, if the limitation on liability is upheld by the Court,

---

[3] The pages of Gemnet's Memorandum of Law are not numbered, but the Court has assigned page numbers for ease of reference.

then FedEx should be required to return to Gemnet all "excess charges" it paid on all its shipments in which it declared a value in excess of $500, "since it was misled into believing that it was insured up to the excess value declared and paid the charges for that reason."  (Pl. Mem., at 3.)

In reply, FedEx argues that "return" shipments are explicitly and unambiguously covered by the "Terms and Conditions" of the FedEx Service Guide, pursuant to the section on "undeliverable shipments," and that the contractual limitation of liability is valid and enforceable because Gemnet is a "sophisticated shipper."  (*See* Defendant Federal Express Corporation's Reply Brief to Plaintiff's Response to Federal Express's Memorandum in Support of Motion for Partial Summary Judgment, dated Feb. 8, 2008 ("Def. Reply") (Dkt. 36), at 2-6.)  FedEx also argues that Gemnet's claim for the return of all declared value charges it previously paid was not raised in the Complaint, and that, in any event, the FedEx Service Guide provides the remedy for invoice adjustments.  (Def. Reply, at 6.)

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

### A.   Fed. R. Civ. P. 56

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), *i.e.*, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *accord Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), and the Court must view the record in the light most favorable to the non-movant by resolving all ambiguities and drawing all reasonable inferences in favor of that party, *Matsushita*, 475 U.S. at 587-88; *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir. 1995). Where, however, the non-movant has no evidentiary support for an essential element on which it bears the burden of proof, summary judgment is warranted. *Celotex*, 477 U.S. at 322-23; *Silver v. City Univ. of New York*, 947 F.2d 1021, 1022 (2d Cir. 1991); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.").

**B.    Local Civil Rule 56.1**

Under this Court's rules, a party moving for summary judgment under Rule 56 must submit "a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). If the opposing party fails to respond to the moving party's Rule 56.1 Statement, then the material facts contained in the moving party's statement are deemed admitted as a matter of law. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

"The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing the district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller,* 258 F.3d 62, 74 (2d Cir. 2001). Local Rule

7

56.1, however, does not relieve the party seeking summary judgment of the burden of

establishing that it is entitled to judgment as a matter of law. *Id.* Summary judgment may only

be granted where the Court is satisfied that the undisputed facts, as supported by the record,

"'show that the moving party is entitled to a judgment as a matter of law.'" *Champion v. Artuz*,

76 F.3d 483, 486 (2d Cir. 1996) (quoting Fed. R. Civ. P. 56(c)).

        **C.**     **Scope of Federal Preemption**

      On the issue of preemption, the Airline Deregulation Act of 1978, 49 U.S.C. § 41713

("ADA"), provides that:

> Except as provided in subparagraph (B), a State . . . may not enact
> or enforce a law, regulation or other provision having the force and
> effect of law related to a price, route, or service of an air carrier or
> carrier affiliated with a direct air carrier through common
> controlling ownership when such carrier is transporting property
> by aircraft or by motor vehicle (whether or not such property has
> had or will have a prior or subsequent air movement).

49 U.S.C. § 41713(b)(4)(A) (2006). This provision "bars state-imposed regulation of air

carriers," *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995), and was intended to

promote uniformity in the business of air carriage to the exclusion of inconsistent and potentially

burdensome state regulations, *see North American Phillips Corp. v Emery Air Freight Corp.*,

579 F.2d 229, 232-34 (2d Cir. 1978). Under this ADA provision, state tort claims, including

those sounding in negligence or fraud, are preempted by federal law, when such claims are based

on lost or damaged cargo. *Feldman v. United Parcel Service,* No. 06 Civ. 2490 (MHD), 2008

WL 800989, at *10 (S.D.N.Y. Mar. 24, 2008); *see also Breitling U.S.A. Inc. v. Federal Express

Corp.,* 45 F. Supp. 2d 179, 187 (D. Conn. 1999) (holding that the ADA preempts negligence

claims) (citation omitted).

In *Wolens*, however, the Supreme Court carved out an exception from preemption under the ADA for "suits alleging no violation of state-imposed obligations but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings," pointing out that "[a] remedy confined to a contract's terms simply holds parties to their agreements." *Wolens*, 513 U.S. at 228-29.  Based on *Wolens*, it has generally been held that a shipper's contract claim for the value of goods lost or damaged in interstate air shipment will not be preempted by the ADA and may be maintained, although such claims will be governed by federal common law. *See Eli Lilly do Brasil, Ltda. v. Fed. Express Corp.*, 502 F.3d 78, 81 (2d Cir. 2007) (citing *Nippon Fire & Marine Ins. Co. v. Skyway Freight Systems, Inc.,* 235 F.3d 53, 59 (2d Cir. 2000); *United States Gold Corp. v. Federal Express Corp.*, 719 F. Supp. 1217, 1223 (S.D.N.Y. 1989). Further, on any contract claim that survives ADA preemption, the parties' obligations may not be "enlarge[d] or enhance[d] based on state laws or policies external to the [parties'] agreement." *Wolens,* 513 U.S. at 233.

Accordingly, where the parties' contract contains a limitation on the carrier's liability that is valid and enforceable under federal common law, a plaintiff cannot avoid that limitation "by framing its claims in tort." *Nippon Fire,* 235 F.3d at 61.  This is because "[a] valid limitation of liability clause governs 'not only the nature and extent of [the carrier's] liability, but also the nature and extent of the shipper's right of recovery.'" *Id*. at 60.  Thus, while a shipper whose state-law tort claims are preempted by the ADA may still be able to pursue *federal* common law tort claims, *see Feldman,* 2008 WL 800989, at *10, an enforceable limitation on liability in a contract of carriage will still apply, "'whether the action sounds in tort or contract,'" *id.* (quoting *Welliver v. Federal Express Corp.,* 737 F. Supp. 205, 207 (S.D.N.Y. 1990)).

9

D.      **Carriers' Limitations of Liability under Federal Common Law**

Under federal common law, courts generally refuse to enforce any agreement between a carrier and a shipper that purports to release the carrier altogether from liability for loss caused by the carrier or its servants.  *Ingram Micro, Inc. v. Airoute Cargo Express, Inc.*, 154 F. Supp. 2d 834, 842 (S.D.N.Y. 2001); *Nippon Fire*, 235 F.3d at 59.  A carrier may contractually limit its liability, however, provided that two prerequisites are met.  *Id.*

First, "the limitation of liability must be the result of a 'fair, open, just, and reasonable agreement' between carrier and shipper, entered into by the shipper 'for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount of the risk.'"  *Ingram Micro, Inc.*, 154 F. Supp. 2d at 842 (quoting *Adams Express Co. v. Croninger*, 226 U.S. 491, 508 (1913)).  Second, "the carrier must give the shipper 'the option of higher recovery upon paying a higher rate.'"  *Ingram Micro, Inc.*, 154 F. Supp. 2d at 842 (quoting *Boston & Maine R.R. v. Piper*, 246 U.S. 439, 444 (1918)).  In evaluating whether these prerequisites are met, "courts have considered such factors as:  (1) whether the carrier has given adequate notice of the limitation of its liability to the shipper; (2) the economic stature and commercial sophistication of the parties; and (3) the availability of "spot" insurance to cover a shipper's exposure."  *U.S. Gold*, 719 F. Supp. at 1225 (citations omitted).

II.      **FEDEX'S MOTION**

Although Gemnet has framed its Complaint in terms of two causes of action, Gemnet is essentially asserting three grounds for relief: contract, negligence, and fraud.  To the extent Gemnet pleads its negligence and fraud claims as state-law claims, they are both subject to dismissal as preempted by the ADA, based on the law cited above.  The remaining issue is

10

whether, on Gemnet's contract claim (or on any federal common law tort claim that Gemnet may have), the limitation on liability contained in the FedEx Service Guide should be upheld.

### A.   "Fair, Open, Just, and Reasonable Agreement"

Viewing the evidence in the light most favorable to Gemnet, FedEx has not established that the purported agreement to limit FedEx's liability was the result of a "fair, open, just, and reasonable agreement" between the parties, entered into by the Gemnet "for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount of the risk." *Adams Express Co.*, 226 U.S. at 508.  In particular, genuine issues of material fact exist in this case as to whether Gemnet received adequate notice of FedEx's limitation of liability and as to whether Gemnet agreed to limit FedEx's liability for the purpose of obtaining a lower rate.

"The policy behind requiring a fair and open agreement as to limitations of liability is to ensure that the shipper has notice of the limitation prior to contracting with the carrier and that the carrier is aware of the extent of its liability."  *Ingram Micro, Inc.*, 154 F. Supp. 2d at 843.  As noted above, the FedEx Pricing Agreement, signed by Gemnet, incorporated by reference the FedEx Service Guide, which contains terms limiting FedEx's liability to $500 for shipments of jewelry, and which states that FedEx does not provide insurance of any kind.  It is undisputed, however, that the FedEx Service Guide was never provided to Gemnet.  (Pl. Rule 56.1 Stm't, at ¶ 6; Newton Aff., Ex. A, at 41.)  It is also undisputed that Houchens, of FedEx, was aware that it was the nature of Gemnet's business to ship jewelry worth more that $500, but that he never discussed, with Khiyaev, of Gemnet, any insurance of jewelry shipments with high declared values.  (Newton Aff., Ex. A, at 23, 26.)

FedEx argues that actual notice is not required in this case because Gemnet, as a sophisticated shipper, had constructive notice of the terms and conditions in the FedEx Service

Guide.  (Def. Reply, at 5.)  The cases cited by FedEx, however, are factually distinct and do not
persuade the Court that Gemnet should necessarily be viewed as a sophisticated shipper.  In
*Ingram Micro*, for example (cited in Def. Reply, at 5), the Court found that the shipper's
purchase of separate insurance demonstrated that the shipper was on notice and understood the
limitation of liability.  154 F. Supp. 2d at 843.  Moreover, the plaintiff in that case was a large
software corporation that had been contracting with the carrier for similar shipments for the prior
two years.  *Id*.  No such facts are present here.  In *U.S. Gold* (cited in Def. Reply, at 5), the
shipper had *actual* notice of the limitation of liability because it had suffered a prior loss of a
FedEx shipment, 719 F. Supp. at 1220, and the parties did not dispute that the shipper was
sophisticated, *id*. at 1225, as the shipper had shipped several thousand packages annually with
FedEx, *id*. at 1219.  Further, in *U.S. Gold*, as in *Ingram Micro*, the shipper had actually
purchased separate insurance, which the Court found indicative of the fact that the shipper was
on notice of the limitation of liability.  *Id*. at 1225.  Finally, in *Cash Am. Pawn, L.P v. Federal
Express Corp.*, 109 F. Supp. 2d 513 (N.D. Tex. 2000) (cited in Def. Reply, at 5), the shipper had
shipped over 24,000 packages with FedEx, most of which contained jewelry, prior to the
initiation of the lawsuit.  *Id*. at 520.  In comparison, Gemnet is a small business, which
shipped 74 packages, had obtained no outside insurance for the shipments, and, according to
Gemnet, had been in the business of shipping jewelry for only six months as of the date of its
claimed loss.[4]  (Khiyaev Aff., at ¶¶ 17-19; Newton Aff., at ¶ 16; Pl. Mem., at 2.)

---

[4] FedEx disputes that Gemnet should be viewed as a new business, arguing that Khiyaev
"has been working in the shipping business with three different companies since 1999." (Def.
Mem., at 10.)  Khiyaev, however, claims only to have been a sales representative in his prior
employment, and claims that he never reviewed any FedEx contracts or spoke with any FedEx
representatives in his prior roles.  (Khiyaev Aff., at ¶ 2.)

12

Overall, this Court finds that FedEx has not established as a matter of law that Gemnet was a sophisticated shipper. Thus, FedEx cannot obtain summary judgment based on a constructive notice theory. *See Feldman*, 2008 WL 800989, at *13.

With respect to actual notice, the Court applies a two-part test to assess whether adequate notice of a limitation of liability has been provided to the shipper. *See Ward v. Cross Sound Ferry*, 273 F.3d 520, 523-24 (2d Cir. 2001) (citing *Sam L. Majors Jewelers v. ABX, Inc.* 117 F.3d 922, 930 (5th Cir. 1997), and applying the two-part test formulated in that case); *Feldman*, 2008 WL 800989, at *13 (same). First, the "physical characteristics" of the parties' agreement must "provide reasonable notice to the customer." *Sam L. Majors*, 117 F.3d at 930. Second, the Court must consider "the conditions under which the shipment was made." *Id.*

The "physical characteristics" portion of the test focuses on the language, positioning, and actual availability to the customer of the contract terms. *See Feldman*, 2008 WL 800989, at *14. The purpose of this part of the Court's analysis "is to determine what information was directly before the plaintiff, in writing, at the time of the transaction," *id.*, at *13, including what was "readily available" to him, *id.*, at *15. Viewing the facts in the light most favorable to Gemnet, it is not clear that the FedEx Service Guide was directly before Gemnet or readily available to it. Although the FedEx Pricing Agreement expressly incorporates the Service Guide by reference and notifies customers that the Service Guide is available on FedEx's website, it provides a URL address only for the FedEx home page and does not provide a direct address for the Service Guide itself. (Def. 56.1 Stm't, at ¶ 6.) Moreover, the record is silent as to whether Gemnet's owner, Khiyaev, had access to the Internet at the time he signed the contract of carriage. Under the circumstances, it is not clear that the terms of the Service Guide were

13

readily available to Plaintiff.  *See Feldman*, 2008 WL 800989, at *13-*16 (finding that a triable dispute existed as to whether notice was adequate, where plaintiff was instructed to access a tariff on the UPS website or at a retail location, but a direct link was not provided).

The conditions to be considered under the second portion of the so-called "*Sam Majors* test" include the customer's familiarity with the contract of carriage, the time and incentive under the circumstances to study the provisions of the contract, and any other notice that the customer received outside of the contract.  Here, the record is vague as to the conditions under which Khiyaev signed the contract of carriage on Gemnet's behalf (*see* Newton Aff., Ex. A, at 32; *see generally* Def. Rule 56.1 Stm't, Ex. 2 (excerpts of transcript of deposition of Boris Khiyaev, dated Sept. 20, 2007); Khiyaev Aff., at Ex. A (same)), and FedEx has not put forth any evidence to establish that Gemnet received any other notice of the limitation of liability, outside of the contract.  On the record presented, Gemnet has not demonstrated the absence of any material disputed fact as to whether Gemnet was on fair notice of the limitation of liability.

In addition, it is far from clear that Gemnet entered into the agreement to limit FedEx's liability "for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount of the risk."  *Adams Express Co.*, 226 U.S. at 508.  Not only does the evidence fail to establish that Gemnet chose the lower of two or more rates with the understanding that this would increase its risk, it shows that Gemnet's principal may have believed that Gemnet was paying 5% of the declared value of its shipments in exchange for bearing *no* risk.  (Newton Aff., at ¶ 17; Khiyaev Aff., at ¶ 18.)  At the very least, Gemnet has introduced evidence sufficient to put this fact in dispute.

14

For the foregoing reasons, FedEx has not established, as a matter of law, that the purported agreement to limit its liability was the result of a "fair, open, just, and reasonable agreement" between the parties, entered into by the Gemnet "for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount of the risk."  Nevertheless, the Court will briefly consider whether Defendant has established that FedEx gave Gemnet "the option of higher recovery upon paying a higher rate."  *Boston & Maine R.R.*, 246 U.S. at 444.

### B.   Option of Higher Recovery Upon Paying a Higher Rate

The FedEx Service Guide advises the shipper to contact an insurance agent or broker if increased insurance coverage is desired above the $500 limit for items such as jewelry.  (Moore Aff., Ex. G.)  As discussed above, however, there is some dispute as to whether the Service Guide was readily available to Gemnet.  In addition, Houchens acknowledged that he did not discuss with Khiyaev ways in which Gemnet could insure its higher value shipments.  (Newton Aff., Ex. A, at 26.)  Consistent with this evidence are Khiyaev's sworn statements that he was unaware that FedEx had a special program for shippers of jewelry with high declared values, and that he believed that Gemnet's shipments were fully insured by FedEx.  (*See* Khiyaev Aff., at ¶¶ 3-4, 11; *see also* Newton Aff., at ¶ 16.)  Under the circumstances, factual issues remain as to whether Gemnet was given the option of paying a higher rate for higher recovery.

### CONCLUSION

For all of the foregoing reasons, FedEx's motion for partial summary judgment (Dkt. 28) is granted to the extent it seeks dismissal of Gemnet's state-law tort claims as preempted under

the ADA, but is denied to the extent it seeks to limit Gemnet's damages to $500 on Gemnet's

contract claim. The parties are directed to contact the Court to schedule a pre-trial conference.

Dated:  New York, New York
          March 30, 2009

SO ORDERED

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Michael F. Newton, Esq.
Law Office of Michael F. Newton
286 Madison Avenue
New York, NY  10017

Olivia M. Gross, Esq.
Newman Myers Kreines Gross Harris, P.C.
14 Wall Street
New York, NY  10005

Thomas Whitelaw Murrey, Esq.
Federal Express Corporation Legal Department
3620 Hacks Cross Road Building B Third Floor
Memphis, TN  38125